FILED
97 JUL 14 AM 7:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUL 1 4 1997

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

SUSAN DEWYER WAYNER, et al., }
                              }
    Plaintiffs,                }
                              }   CIVIL ACTION NO.
    vs.                        }
                              }   CV 97-AR-0410-M
THE EQUITABLE LIFE ASSURANCE  }
SOCIETY OF THE UNITED STATES, }
et al.,                       }
                              }
    Defendants.                }

**MEMORANDUM OPINION**

The court has before it the motion of defendant, The Equitable Life Assurance Society of the United States ("the Equitable"), for summary judgment in the above-entitled action. Plaintiffs, Susan and Gary Wayner (the "Wayners"), allege that the Equitable wrongfully foreclosed on the property in question and therefore that the foreclosure is void or voidable, or, in the alternative, that they are entitled to an accounting and to a declaration that they own a right to redeem for some amount to be determined. Finding that no genuine issues of material fact exist, this court determines that summary disposition under Rule 56 is appropriate.

### I. Pertinent Undisputed Facts

The real property at issue in the above-styled action

1

consists of three contiguous parcels of land located in Fort Payne, Alabama. The real property in question was originally owned by Sarah Dewyer ("Dewyer"), an unmarried woman. Dewyer transferred her interest in the property to the Wayners via quit claim deed on or about April 4, 1996.

In the late 1970's Dewyer entered into two ground leases with Mitchell Ashy ("Ashy") covering the property. Thereafter, the ground leases were assigned to the Mitch Ashy-Fort Payne Partnership (the "Partnership"). Ashy and the Partnership constructed two buildings on the property, which were thereafter leased to K-Mart and Food World. Dewyer explicitly agreed in the ground leases to subordinate her ownership interest in the property in order to obtain construction and permanent mortgages on the property.

To finance construction, the Partnership acquired a loan from the Equitable for $1,352,000.00. To secure the loan, the Partnership, as debtor and mortgagor of the leasehold interest, and Dewyer, as mortgagor of the fee interest, executed a mortgage on or about September 14, 1978 (the "1978 mortgage"), in favor of the Equitable. Said mortgage was recorded in Mortgage Book 473 at pages 459-465 in the office of the probate judge of DeKalb County, Alabama.

On or about October 11, 1979, the parties modified the 1978

2

mortgage (the "1978/79 mortgage"), executing a mortgage in favor of the Equitable for $1,325,000.00. Paragraph 33 of the 1979 mortgage states that the this mortgage is a modification of the 1978 mortgage with no additional funds being advanced. The Partnership was the sole maker on the original note. The 1979 mortgage was recorded in Mortgage Book 481 at pages 37-45 in the office of the probate judge of DeKalb County, Alabama.

Thereafter, on or about August 14, 1980, the Partnership, as debtor and mortgagor of the leasehold interest, and Dewyer, as mortgagor of the fee interest, executed a mortgage in favor of the Equitable to secure an additional loan for $850,000.00 (the "1980 mortgage"). This 1980 mortgage contained a cross-collateralization provision which says:

> 32. This mortgage is also given as additional security for the debt secured by a mortgage on the subject property from the mortgagors herein to the mortgagee herein in the amount of One Million Three Hundred Twenty Five Thousand and No/100 ($1,325,000.00), which said mortgage is dated October 11, 1979 and recorded at 56508 in the Office of the Judge of Probate of Dekalb County, Alabama. <u>It is hereby understood and agreed between the parties hereto that the term of this mortgage is hereby extended and spread so as to coincide with, and be the same as the term of said mortgage and that any default in the hereinabove described mortgage shall constitute a default under this mortgage also</u>.

(Emphasis Supplied). Once again, the Partnership was the sole maker on the note being secured. This mortgage was recorded in

Mortgage Book 485 at pages 292-299 in the office of the probate judge of DeKalb County, Alabama.

On or about November 9, 1993, the Equitable provided Dewyer written notice that it was accelerating the 1978/79 mortgage and expecting payment in full of the note. Thereafter, on or about January 24, 1995, the Equitable provided the Partnership, although not Dewyer, written notice that it was accelerating the payment of the 1980 mortgage in full. Accordingly, the Partnership's entire balance was due on the 1978/79 mortgage on October 1, 1995.

Neither Dewyer nor the Partnership paid the secured balances in full on October 1, 1995. Consequently, the Equitable took action as if Dewyer defaulted on the 1978/79 mortgage, and thereby, via the cross-collateralization provision, after a thirty (30) day grace period, took steps in accordance with the terms of the mortgage to effectuate a non-judicial foreclosure. In effectuating the foreclosure, the Equitable applied the rental proceeds received from K-Mart and Food World to expenses associated with foreclosure. The expenses exhausted the rental proceeds, leaving no proceeds to apply against the indebtedness.

The Equitable ran notice of the foreclosure by publication in *The Times Journal*, a newspaper of general circulation and publication in Dekalb county. The notice was published on

4

December 21 and 28, 1995, and January 4, 1996. In addition, the Equitable sent personal notice of the impending sale to Dewyer through her attorney. The foreclosure notice provided that the property described would be sold at public outcry subject to certain easements, encumbrances, and other matters of record that take priority including the 1978 mortgage amended in 1979. The notice contemplated foreclosure solely on the 1980 mortgage.

On January 9, 1996, the Equitable offered the mortgage for sale at public outcry in front of the courthouse door at the DeKalb County courthouse to the highest bidder. The Equitable was the highest and only bidder on the mortgage, purchasing the property for $1,723,838.00. This sum was credited against the indebtedness secured by both mortgages, leaving a deficiency of $19,339.00.

Plaintiffs requested and received a letter reflecting the amount the Equitable believed to be necessary to redeem. Neither Dewyer nor plaintiffs have tendered payment in an effort to exercise their statutory right of redemption. The Wayners have failed to tender any sum whatsoever, arguing that there is a $38,001.00 discrepancy between the amount reflected as due in the loan history as of March 1, 1991, and the amount reflected due on a second modification between the Partnership and the Equitable as of March 1, 1991. The amount reflected in the second

5

modification Alabama mortgage corresponds precisely with the amount due as of March 1, 1992, in the loan history.

## II. Analysis

The Wayners claim that the foreclosure is void or voidable for numerous reasons. Furthermore, they assert that even if the foreclosure was proper, the Equitable failed to provide an accounting and correctly to state the amount necessary to pay off the mortgage or to redeem. While the Wayners assert numerous grounds upon which the foreclosure is void or voidable, they only pursue the following in response to the Equitable's motion for summary judgment: (1) the foreclosure was not made according to law; (2) the sale was not made according to the provisions of the 1980 mortgage; (3) proper credits were not made to the debt secured by the 1980 mortgage prior to foreclosure; and (4) the balance claimed due under the 1980 mortgage is incorrect. Accordingly, because it is clear to the court that the Wayners' other alleged grounds for wrongful foreclosure (which are as follows: (1) the notice of foreclosure was not published in form and manner required by statute; (2) the foreclosure deed does not comply with the statute; (3) the foreclosure sale was not legally and fairly conducted; (4) the price the property was sold for was disproportionate to its true value; and (5) the property should bring more than the balance due on the debts secured by said

6

mortgages) do not raise genuine issues of fact and are effectively conceded by the Wayners, the Equitable's motion for summary judgment as to those claims can quickly be granted. The court turns now to address the remaining claims.

### A. Rule 56

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). The obvious was stated by the Eleventh Circuit as follows: "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). The Equitable has invoked Rule 56.

### B. Foreclosure and Sale

The Wayners allege that there existed no default in payment on the 1980 mortgage and therefore, the Equitable wrongfully foreclosed upon said mortgage and sold the property on which they have acquired whatever interest Dewyer had. It is clear to the court that in order for the Equitable to properly foreclose the 1980 mortgage and to sell the mortgaged property, the 1980

7

mortgage must have been in default. Paragraph 23 the 1980 mortgage provides:

> [I]f default be made in the performance of any agreement herein contained, and the default continues beyond any applicable grace period, or at the maturity of the indebtedness secured hereby, however such maturity may be brought about and whether or not resulting from acceleration, then and in any and all said events, the entire indebtedness secured hereby shall immediately become due and payable at the option of the mortgagee, and this mortgage shall be subject to foreclosure at the option of the mortgagee, and the mortgagee shall have the right, and is hereby authorized . . . to sell the premises or any portion thereof . . . as may be deemed by the mortgagee to be appropriate.

(Emphasis Supplied). When the "words employed in the mortgage are sufficient to evidence an intention that a sale of the property embraced therein may be made after default," a foreclosure can legally be conducted. See *Lee v. Macon County Bank*, 172 So. 662, 665 (Ala. 1937). Because the language of the mortgage evokes a clear right to foreclose upon default, the initial inquiry before this court is whether the 1980 mortgage was in default, thereby allowing the effectuation of a non-judicial foreclosure and sale.

The Wayners argue that the 1980 mortgage and loan were not in default as of October 1, 1995, because Dewyer did not receive proper notice under the mortgage of the Equitable's intent to accelerate payment in full. It is undisputed, however, that the

8

Partnership, which is the sole maker on the note secured by the 1980 mortgage, received timely written notice prior to October 1, 1995, that the Equitable was accelerating in the full the payment of the 1980 note and mortgage. Because Dewyer is not a maker on the note, the Equitable was not required to provide her notice of the acceleration of the note. Accordingly, the 1980 mortgage and note fell into default after October 1, 1995. Upon default the Equitable had the right under the power of sale in the 1980 mortgage to foreclose and sell the property. (The Equitable's Evidentiary Submissions Exh. 2, at ¶ 23). *See Reeves Cedarhurst Development Corp. v. First American Federal S & L Ass'n*, 607 So. 2d 180, 182 (Ala. 1992).

Even if this court should determine that the written notice to the Partnership with respect to the 1980 mortgage was insufficient, it is undisputed that Dewyer did receive actual notice of the acceleration of the 1978/79 note and mortgage. The notice informed Dewyer that the Equitable was accelerating payment of the note and mortgage in full. Thereafter, the note became due and payable in full on October 1, 1995. The note and mortgage fell into default when they were not paid in full on October 1, 1995. It is clear to the court that due to the cross-collateralization provision in paragraph 32 of the 1980 mortgage, any default in the 1978/79 mortgage is likewise a default in the

9

1980 mortgage. If it was equivocal, that ambiguity was resolved by the notice. The cross-collateralization provision provides "that any default in the hereinabove described mortgage [1978/79 mortgage] shall constitute a default under this mortgage also." (The Equitable's Evidentiary submission Exh. 2, at ¶ 32).

Because there existed a default under the 1978/79 mortgage and note and under the 1980 mortgage and note, and because the mortgage contained a power to sell provision, the Equitable had the right under the mortgage to foreclose and sell the property. *See* Ala. Code § 35-10-1 (1997). Thirty days subsequent to the default, the Equitable in accordance with paragraph 23 of the 1980 mortgage and Alabama Code § 35-10-8 ran three published notices in three successive weeks in the *Times Journal* that it was going to foreclose upon the 1980 mortgage and sell the property securing said mortgage. In addition, the Equitable provided Dewyer, through her attorney, personal notice of the pending foreclosure and foreclosure sale. Thereafter, on January 9, 1996, the property was sold to the highest bidder, the Equitable.

The law is well established that a foreclosure sale held in accordance with a power of sale in a mortgage "is always presumed to be regular and valid." *Hunter-Benn & Co. v. Bassett Lumber Co.*, 139 So. 348 (1932). Accordingly, because the Equitable

10

foreclosed upon the mortgage and sold the property in accordance with the mortgage and the Alabama code, the Equitable's motion for summary judgment as to the Wayners' claim for wrongful foreclosure is due to be granted.

This court turns now to address the redemption issue. When the Equitable foreclosed and then purchased the property at issue, Dewyer's statutory right of redemption arose under § 6-5-248 of the Alabama Code.[1] *See McGowan v. Clayton*, 679 So. 2d 1136, 1139 (Ala. 1996). Thereafter, it is apparent from the evidence that Dewyer properly retained her statutory right of redemption and assigned it via quit claim deed to the Wayners. *See Daugherty Assoc. v. Silmon*, 535 So. 2d 135, 138 (Ala. 1988)(quit claim deed effective to convey the statutory right of redemption); *see also* Ala. Code §§ 6-5-248(5) & 251 (1997).

Accordingly, this court turns to determine whether the Wayners have properly exercised their statutory right of redemption. In order to exercise the statutory right of redemption under Alabama Law the Wayners must tender the amount necessary to redeem the foreclosed property within one year of the foreclosure sale or be excused from tender. *See* Ala. Code §§

---

[1] Dewyer's property right, the equity of redemption, expired contemporaneously with the foreclosure, sale and commencement of her statutory right of redemption. *See McGowan*, 679 So. 2d at 1139; *see also F.D.I.C. v. Morrison*, 747 F.2d 610, 613 (11th Cir. 1984), *cert. denied*, 474 U.S. 1019, 106 S. Ct. 568 (1985).

11

6-5-248 & 253; *see also In re Read*, 131 B.R. 188 (M.D. Ala. 1991). "Tender of payment is a condition precedent to filing a complaint to redeem, unless excused." *See Daugherty*, 535 So. 2d at 136-137. The Wayners failed to tender the amount due to redeem the property within one year after the foreclosure sale. In fact, the Wayners did not tender any amount. Instead, the Wayners filed this action on the last day of the one year statutory period. Consequently, the Wayners are barred from redeeming said property unless tender is, for some reason, excused.

The Wayners assert that they were excused from tendering the amount of redemption or any amount because the amount provided by the Equitable as the amount due to redeem is incorrect. The Wayners assert that rental proceeds subsequent to the default were misappropriated and that the amount provided by the Equitable as necessary to redeem does not reflect the discrepancy between the loan history and the 1991 Mortgage Modification. As a result, the Wayners assert that they are excused from tendering redemption payment prior to filing this action and prior o the one year deadline. However, before one can seek the aid of the court, the party seeking to redeem must exercise due diligence to ascertain the proper amount due and a bona fide disagreement between the parties regarding the lawful charges must exist. *See*

12

*Pankey v. Daugette*, 671 So. 2d 684, 690 (Ala. Civ. App. 1995). Furthermore, "[t]he inclusion of improper or questionable charges, standing alone, is not a valid excuse for failure to tender the amount owed." *Id.* (citing *Moore v. Horton*, 491 So. 2d 921, 924 (Ala. 1986).

In the instant action, it is clear that the Wayners owed some amount in order to redeem the property. Furthermore, it is apparent that the Wayners might well have, through due diligence, determined the amount due and tendered that amount to the court or to the Equitable.[2] Instead, the Wayners have not tendered a single penny when it is clear that a redemption amount was due nor have they offered to pay an amount ascertained by the court. The Wayners must at least have tendered the amount due for redemption minus any disputed amounts. *See Pankey*, 671 So. 2d at 690. Accordingly, the Wayners have failed to demonstrate a valid excuse for not tendering the redemption amount prior to filing this action or prior to the expiration of the one year statute. The Equitable's motion for summary judgment as to the Wayners'

---

[2] For example, the Wayners allege that they do not have to tender any amount because there is a $38,001.00 discrepancy between the amount reflected due on March 1, 1991, in the loan history and the amount due on that same date as reflected in a second modification Alabama mortgage. It is clear that some amount was due on that date. Furthermore, the amount reflected due on March 1, 1991, in the second modification Alabama mortgage, which was hand written, corresponds exactly with the amount due on March 1, 1992, in the loan history. (Exh. A to Meinzen Aff. and Exh. E to Wayner Aff.) The error appears to be a scrivener's error that could have been cured through minimal due diligence.

13

right to redeem is due to be granted.

    A separate and appropriate order will be entered.

    DONE this \_\_11th\_\_ day of July, 1997.

                              WILLIAM M. ACKER, JR.
                              UNITED STATES DISTRICT COURT